[Civ. No. 3308.   Third Appellate District.—October 20, 1927.]

WILLIAM FREEMAN, Appellant, v. L. L. SULLIVAN, Respondent.

Charles A. Wetmore, Jr., and Crofton & Wetmore for Appellant.

Sooy & Heywood for Respondent.

PLUMMER, J.—Action by the plaintiff for an accounting and to charge defendant with one-half of losses incurred. The defendant had judgment, and the plaintiff appeals.

The complaint filed herein sets forth two alleged causes of action, one based upon an allegation that the plaintiff and defendant formed a partnership and conducted a partnership for the purpose of buying and selling beans. The second cause of action sets forth that the plaintiff and defendant engaged in a joint adventure, the purpose of which was to buy and sell beans. The second cause of action set forth in the complaint was dismissed upon the trial. The answer of the defendant denies the partnership.

The transcript shows that the plaintiff and defendant, in the year 1917, entered into an oral agreement for the purpose of buying and selling beans. The plaintiff was to furnish the money; the defendant was to buy and sell the beans. The profits, if any, were to be divided. The testimony of the plaintiff was to the effect that the losses and gains were to be shared equally. The testimony of the defendant was to the effect that the plaintiff advanced all money; he, the defendant, was to do the buying and sell-

ing; that the plaintiff was to bear the losses, if any, and the profits, if any, were to be shared equally.

The court found that the relation of partnership was never created between the parties; that under the terms of the agreement entered into between the parties the plaintiff was to bear all the losses. The business carried on did result in a loss of several thousand dollars. The transcript further shows that the plaintiff was a man possessed of considerable means, having at his command a considerable sum of ready cash; that the defendant was a young man, twenty-four years of age, engaged as the driver of a creamery wagon, and had had some slight experience in buying and selling beans.

Upon this appeal the appellant sets forth five reasons why the judgment of the trial court should be reversed. First, that the court erred in failing to rule upon and grant plaintiff's motion to strike out a portion of defendant's answer. Second, that the court erred in granting defendant permission to file an amended answer. Third, that the court erred in overruling the plaintiff's objection to the introduction in evidence of defendant's exhibit number one, being copy of a complaint. Fourth, that the court erred in denying plaintiff's motion for a new trial. And, fifth, insufficiency of evidence to justify the findings of fact. While the foregoing alleged errors have been assigned, only one, that is the fifth, has been seriously argued, and the only one to be considered in this opinion for the simple reason that it is the only one that touches the matter of substance affecting the merits of this action.

The agreement between the parties, as we have stated, was oral. The plaintiff testified to all the facts and circumstances necessary to show a partnership or joint adventure, and if the court, upon the testimony introduced by the plaintiff, had found the existence of a partnership, there would be no question as to the sufficiency of the evidence to sustain such finding of the court. On the other hand, the defendant testified to a diametrically opposite state of facts; and the question presented to us is not whether there is a preponderance of evidence one way or the other, but whether there is sufficient evidence to sustain the findings of the court. The defendant testified as follows: "I had some transactions with Mr. Freeman in regard to buying

and selling beans. The contract between us was an oral contract; nothing was in writing. The agreement was made in 1917. The conversation took place on Fifth Street at the corner of Fifth and D in Marysville at Rock & Young's Tire Shop. That was the only conversation I ever had with Mr. Freeman in regard to the contract. Mr. Freeman asked me what I was doing and I told him I was buying beans, and he asked me who I was buying for, and I told him for Rosenberg Brothers, and some for Walter Lewis of the J. R. Garrett Company. He asked me if I ever came across what you call 'snap buys,' and I told him a few. Freeman said, 'I have considerable money lying in bank. If you care to go in and buy and sell the beans we will make some money,' and I told him I was not in very good shape because I had no money. He said, 'You don't have to worry about money because you won't lose on this deal. I will advance the money and you buy and sell the beans and we'll split the profits.' At that time I spoke about who would name the buying price and who would name the selling price of the beans, and I said it was to be understood that I would buy and sell the beans, and he said 'That's just what I want you to do. I don't want to have anything to do with the beans whatever and I will advance the money.' At the time I spoke to Mr. Freeman I said, 'Mr. Freeman, I have no money to lose at all. I have been working down at the creamery, and I can't take a chance on losing any money.' And Mr. Freeman said, 'I have got lots of money in the bank and I will speculate on these beans. I will put up the money and stand the loss.' I was twenty-four years old at that time.''

Appellant, in his argument, refers to certain insurance policies said to have been taken out upon the beans. The transcript shows the following: ''The respective policies of insurance were then admitted in evidence by the court and marked Plaintiff's Exhibit 'A,' 'B,' 'C' and 'D,' respectively. In said policies of insurance Freeman and Sullivan were insured.'' The respective policies are not set out in the transcript, and nothing further appears in relation thereto, save and except what we have just stated. The transcript also shows that a certain complaint was admitted in evidence in which Freeman and Sullivan were plaintiffs, in an action begun to collect damages alleged to have been suf-

fered by the plaintiffs. The complaint is not set out in the transcript, and nothing, therefore, appears as to its contents. The same is true with reference to a contract with the United States government for the sale of certain beans, being beans handled under the oral agreement referred to. The only record evidence which appears in the transcript is a letter written by L. L. Sullivan to the Rideout Bank authorizing the sale of certain beans. The letter is as follows:

"Marysville, California, March 26, 1921.
"Rideout Bank, Marysville, California,

"Gentlemen: Mr. William Freeman has authorized you to sell, without notice to him, any and all beans which you are holding as collateral security for his note to you for $13,372.89, given August 16, 1919. As I am interested with Mr. Freeman in the beans pledged as collateral, I hereby consent to the said authorization and to any sale which may be made by you.

"Yours very truly,
"L. L. SULLIVAN."

Even though the writings just referred to had been set out in the transcript, and assuming that their contents would tend to show the relation of partnership existing between the plaintiff and defendant in relation to the buying and selling of the beans, yet the trial court had before it the testimony of the defendant which we have just set forth, and if the trial court believed that to be a correct version of the transaction, then and in that case the record shows sufficient testimony to uphold the findings of the trial court.

We do not need to review the cases contained in the appellant's brief showing what constitutes a partnership and what constitutes a joint adventure, as the findings of fact in this case upon the testimony which we have set forth render all of them inapplicable. ■ Accepting the testimony of the defendant as true, which the trial court had a right to accept, then the last clause found in section 2404 of the Civil Code is applicable. That section reads: "An agreement to divide the profits of a business implies an agreement for a corresponding division of its losses, unless it is otherwise expressly stipulated." From this it follows

that all of the cases having to do with an agreement where the parties enter into a relation involving a division of the profits without any express stipulation as to the losses, are not in point. The court in this case has accepted the defendant's version that the plaintiff was to contribute the money; the defendant was to contribute his labor; the defendant was to have as his compensation one-half the profits, if any; that the plaintiff was the one who was speculating and taking the chances of losing by the venture. The plaintiff was putting up the principal with the hope of obtaining a profit thereon, and taking the chances of losing a portion of the principal. The defendant was giving his labor with the hope of obtaining a reward therefor, and a chance of receiving no compensation.

The mere fact that the defendant was to have one-half of the profits, if any, as his compensation, is not sufficient to show a partnership. A somewhat similar question was passed upon in the case of *Fee* v. *McPhee,* 31 Cal. App. 295 [160 Pac. 397]. The court there, among other things, said: "Plaintiff had no interest in the profits as property. He was simply employed under an arrangement by which he was to receive for his services a given sum out of, or a proportion of, the profits. *Berthold* v. *Goldsmith,* 24 How. (U. S.) 536 [16 L. Ed. 762]. 'The general rule is,' as was stated in *Jernee* v. *Simonson,* 58 N. J. Eq. 282 [43 Atl. 370], 'if there is no community of interest in the property of a business, there is no partnership *inter sese* by mere participation in the profits.' " A somewhat similar case is that of *Jones* v. *Title Guaranty & Trust Co.,* 178 Cal. 375 [173 Pac. 586], where it was held that such a venture did not constitute a partnership. Likewise, in the case of *Vanderhurst* v. *DeWitt,* 95 Cal. 57 [20 L. R. A. 595, 30 Pac. 94], where it is said: "The fact that appellant was to receive one-half the net profits of the farming and threshing business would not make him a partner therein if the understanding and agreement between the parties was that he was to receive the same only as a compensation for the use of certain personal property let by him to George DeWitt, to be used by the said George DeWitt in the prosecution of that business," etc. Many cases might be cited where one of the partners was to receive a certain proportion of the profits

as his compensation and a partnership relation held not to be thereby created. (See *Lyden* v. *Spohn-Patrick Co.,* 155 Cal. 177 [100 Pac. 236]; *Martin* v. *Sharp & Fellows Co.,* 34 Cal. App. 584 [168 Pac. 373]; *Hanna* v. *Flint,* 14 Cal. 73. See, also, *Whitcom* v. *Converse,* 119 Mass. 38 [20 Am. Rep. 311]; *Meadows* v. *Mocquot,* 110 Ky. 220 [61 S. W. 28].) Other cases might be cited showing that where there is no community of interest in the property, there is no partnership, but as this case comes squarely under the exception clause of section 2404 of the Civil Code, citation of authorities is unnecessary.

The evidence which we have set forth appearing to have been accepted by the trial court at its face value, the objection that the findings are not properly supported is untenable, and a discussion of the law relative to partnerships and joint adventures would seem to be wholly unnecessary.

The judgment of the trial court is affirmed.

Weyand, J., *pro tem.,* and Hart, Acting P. J., concurred.